UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE TALBERT,

        Plaintiff,               Case No. 04-40271

vs.

                                  HONORABLE PAUL V. GADOLA
                                  HONORABLE STEVEN D. PEPE

MGM GRAND DETROIT LLC, dba
MGM GRAND DETROIT CASINO,
a Delaware LLC, et al

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (#17)

      Plaintiff's employment with MGM Grand Detroit LLC (MGM) was terminated following an alleged altercation between Plaintiff, a Caucasian, and an Arfican-American co-worker, Diana Glover. Plaintiff denies her role in the alleged altercation and appealed her termination to MGM through the grievance procedure outlined in the collective bargaining agreement between MGM and Plaintiff's union. Plaintiff filed this lawsuit against her employer and her union following the termination of her employment and her union's refusal to take her grievance to the final stage of the grievance process, arbitration.

      Plaintiff's initial complaint named the coworker involved in the alleged altercation and alleged, among other things, violations of § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 and Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e. Plaintiff filed her Motion for Leave To File Second Amended Complaint on August 8, 2005 (Dkt. #17), which was referred to the undersigned for a hearing and determination pursuant to 28

U.S.C. § 636 (b)(1)(A). In this motion Plaintiff asks to be allowed to remove the co-worker, Diana Glover, as a defendant and dismiss the Title VII claims and add claims pursuant to 42 U.S.C. § 1981 and the Michigan Elliot-Larsen Civil Rights Act. The Defendants object to the addition of the § 1981 and Elliot-Larsen claims. Following a review of the parties' briefs and a telephonic hearing, it was determined that Plaintiff's proposed Second Amended Complaint failed to identify the elements of a claim for racial discrimination pursuant to § 1981 and did not pled sufficient facts to constitute this cause of action. Plaintiff was granted an opportunity to cure the defect(s) by submitting another proposed second amended complaint and the Defendants' arguments were taken under advisement.

For the reasons stated below, IT IS ORDERED that Plaintiff's motion for leave to file the newly proposed second amended complaint is GRANTED IN PART. Plaintiff may submit her Second Amended Complaint as proposed but without the § 1981 claim against the Union Defendants.

### *§ 1981 is not "Preempted" by § 301*

MGM argues that Plaintiff's § 1981 claim is preempted by § 301 because it requires interpretation of the parties' collective bargaining agreement (CBA). While federal labor law may preempt state law where the interpretation and enforcement of a collective bargaining agreement is involved, *Vaca v. Sipes*, 386 U.S. 171 (1967), the Defendants did not provide any case law to support a preemption doctrine involving two federal laws.

To the extent MGM is actually arguing for an election of remedies, that argument must also fail. The United States Supreme Court has held that the independent statutory civil rights accorded citizens by Congress under Title VII of the Civil Rights Act of 1964, as amended, 42

2

U.S.C. § 2000e, were distinct and separate from their contractual rights under a CBA, and the two are

> "not vitiated merely because both were violated as a result of the same factual occurrence.  And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums. ... the relationship between the forums is complementary since consideration of the claim by both forums may promote the policies underlying each."

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 49-51 (1974); *See also, Rios v. Reynolds Metal Co.*, 467 F.2d 54, 57 (5th Cir. 1972);[1] *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969).  The same analysis and conclusion can be made for a civil rights claim under 42 U.S.C. § 1981.  The fact that a § 1981 plaintiff's rights necessarily involve an underlying employment contract is not a reason to preclude the plaintiff automatically from ever pursuing a statutory civil rights claim in court.  This is so even where that underlying contract contains a provision for addressing grievances, as discussed more fully below.

In fact, the allegations in Plaintiff's Second Amended Complaint are not really breach of contract claims requiring interpretation of the underlying contract.  Plaintiff's proposed amended complaint alleges that Defendant MGM "intentionally discriminated against Plaintiff because she is Caucasian. ... by discharging her and terminating her contractual employment relationship, Second Amended Complaint, ¶¶ 88-89, and that the Union Defendants' "representation of Plaintiff was different than those afforded similarly situated African-American employees." Second Amended Complaint, ¶ 111.  She has also added allegations that (a) MGM was

---

[1] The union defendants note in their brief that *Rios* was rejected by *Alexander* v. *Gardner -Denver Co.*, 415 U.S. 36 (1974).  Yet a review of *Gardner* reveals that the Court merely rejected the standard for  judicial deference to an arbitrator's decision that had been defined in *Rios* and not the law that a federal civil rights claim is not preempted either by § 301  nor by a collective bargaining agreement containing a mandatory arbitration clause.  *Alexander*, 415 U.S. at 58-59.

3

especially sensitive to and/or defensive about issues regarding African-American complaints of racial discrimination due to a recently settled lawsuit, and (b) the African-American co-worker Plaintiff allegedly assaulted had filed a complaint with the Equal Employment Opportunity Commission following the incident.  Second Amended Complaint, ¶ 45-48.

As Defendants correctly point out, the elements for a prima facie claim for relief under §1981 are: (1) the plaintiff is a member of a protected class, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in § 1981.  *Burton v. Plastics Research Corp.*, 134 F.Supp.2d 881, 886 (E.D. Mich., 2001).[2]  In cases alleging reverse discrimination, where a member of the majority is claiming discrimination on the basis of race, where there are no facts supporting direct proofs of discrimination but rather the claim is based on *McDonnell-Douglas*[3] disparate treatment, the Sixth Circuit has modified  the § 1981 test noted in *Burton*.  In such cases,  in order to establish a prima facie case of reverse discrimination, a plaintiff must show that (1) "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," [citations omitted] and (2) "that the employer treated differently employees who were similarly situated but not members of the protected class." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994)(Title VII case)(citations omitted); *see also Hardman v. University of Akron*  40 Fed. Appx. 116, 119 (6th Cir, 2002)(applying standard to § 1981 claim).

---

[2] § 1981 is applicable to reverse discrimination cases, i.e. racial discrimination in private employment against white persons. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 286-287 (1976).

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4

Notwithstanding the strength or weakness of Plaintiff's claims, if Plaintiff can show – either by direct evidence or through the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden shifting framework – that her employer intentionally terminated her employment because of her race, then she could prevail in her § 1981 case without the need for interpreting her CBA.  Likewise, if Plaintiff can provide direct evidence or *McDonnell Douglas* type proof– such as proving that that the Union Defendants took a similarly-situated African-American union member's grievance to arbitration as Plaintiff contends here – then she could prevail in her § 1981 claim against the Union Defendants without interpretation of the CBA or the Union's Constitution.

### *Plaintiff's Michigan Elliot-Larsen Civil Rights Act Claims Are Not Preempted by § 301*

Defendants further argue that Plaintiff's Elliot-Larsen claim is also preempted under § 301.  Section 301 reflects Congress' intent that a comprehensive, unified body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements made under the aegis of the Act.  *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).  Since 1962, the Supreme Court has held that § 301 preempts state laws that substantially depend upon analysis of the terms of collective bargaining agreements. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (citing *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95 (1962)).  The Supreme Court clarified this rule in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), and explained:

> § 301 pre-emption ... says nothing about the substantive rights a State may
> provide to workers when adjudication of those rights does not depend upon the
> interpretation of such agreements....
> Even if dispute resolution pursuant to a collective-bargaining agreement, on the
> one hand, and state law, on the other, would require addressing precisely the same
> set of facts, as long as the state-law claim can be resolved without interpreting the

5

agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

486 U.S. at 409-10.

As noted by the *Lingle* court, an example of such "independent" claims which are not preempted under § 301 are state laws that "grant nonnegotiable rights that are shared by all state workers." 486 U.S. at 407 n. 7.Applying *Lingle*, the Sixth Circuit has made clear that state anti-discrimination laws are not preempted under § 301. This was made clear in *Tisdale v. United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry, Local 704*, 25 F.3d 1308 (6th Cir.1994):

> Title VII specifically does not preempt state civil rights actions. It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights laws it could not have meant to do so through federal labor law. As the Supreme Court has stated, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract."

*Id.* at 1312 (*quoting Allis-Chalmers v. Lueck*, 471 U.S. at 212 (emphasis added)); *See also*, *Smolarek v. Chrysler Corp.*, 879 F.2d 1326 (6th Cir.1989); *O'Shea v. Detroit News*, 887 F.2d 683 (6th Cir.1989); *Welch v. General Motors Corp., Buick Motor Div.*, 922 F.2d 287 (6th Cir.1990).

The foregoing discussion makes clear that Plaintiff's Elliott-Larsen claim is not preempted under§ 301 because she has at least stated a prima facie case for race discrimination separate from a breach of contract claim under the CBA. Further, unlike the Sixth Circuit in *Pierce,* the Michigan Court of Appeals has held that Elliot Larsen does not require alleging "unusual employer/background circumstances" to state a reverse discrimination claim. *Venable v. General Motors Corp.,* 253 Mich. App. 473, 481 (2002), *appeal dnd.,* 468 Mich. 870 (2003).

### *Futility and Failure to State a Claim*

A motion for leave to amend may be denied for futility "if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir.1986).  On a motion to dismiss the complaint is construed in the light most favorable to the plaintiff, with all allegations accepted as true, and all reasonable inferences drawn in favor of the pleader.  *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir.2002); *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir. 2001). Therefore, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

As noted above, Plaintiff has added allegations regarding MGM's predisposition to reverse discrimination by stating facts that suggest the possibility that her termination from employment was based on a desire to appease African-Americans generally beause of recent complaints, and particularly an African-American employee, Diana Glover, who had recently filed a complaint with the EEOC and the discharge was not based on a good faith belief that Plaintiff had committed the assault against Ms. Glover.  While her added factual assertions are exceedingly thin, these facts, if taken as true, establish a prima facie case of racial discrimination against the Defendant employer pursuant to § 1981.  Other than the added "unusual employer/background circumstances" test for reverse discrimination under *Pierce*, "claims for race discrimination in violation of Elliot Larsen ... are interpreted in accordance with Title VII of the Civil Rights Act of 1964," *Perry v. McGinnis,* 209 F.3d 597, 602 (6th Cir. 2000).  Under these standards, Plaintiff has stated a prima facie case against MGM pursuant to Elliot Larsen as well.

7

Although Plaintiff's claims, after a reasonable period for discovery, may not withstand a Rule 56 challenge, she has met her pleading burden with respect to these claims against MGM.

With respect to the Union Defendants, Plaintiff has failed to state a claim for reverse discrimination pursuant to § 1981 in this circuit. She alleges no facts that would constitute direct evidence of racial discrimination. Paragraphs 108 and 111 of her proposed Second Amended Complaint indicate a disparate treatment claim against the unions. Yet, because she has failed to allege facts concerning background circumstances that support the suspicion that either the union is "that unusual [entity] who discriminates against the majority" her claim fails to state a § 1981 claim under *Pierce. See also Hardman, supra,* 40 Fed. Appx. at 119 (applying this standard to a § 1981 claim). Yet, her Elliot Larsen claim survives due to the Michigan courts rejection of this added requirement of *Pierce*. *Venable, supra,* 253 Mich. App. at 481.

This Court can exercise supplemental jurisdiction over this state law claim against the Union Defendants under 28 U.S.C. § 1367(a), because the claim is so related to the federal question § 301 claim against the Union Defendants that is in the current complaint as to "form part of the same case or controversy under Article III of the United States Constitution." The Court may revisit this issue of supplemental jurisdiction if the §301 claim is later dismissed.

### *§1981 Does Not Require Exhaustion of Intra-Union Remedies Before Seeking Judicial Relief*

The Defendants contend that there exists a requirement that a plaintiff first exhaust their

8

intra-union remedies before seeking judicial relief pursuant to § 1981.[4]  Yet there is virtually no support for this contention, and this court should not create such a requirement when Congress and the circuit courts have had the opportunity to do so and have not done so.[5]

In their initial briefs the cases cited by Defendants in support of an exhaustion requirement all, save one, dealt with the well-established and undisputed exhaustion

---

[4] For reasons stated below Plaintiff need not exhaust administrative remedies before pursuing a § 1981 claim.  Yet, even if that were required, MGM's argument regarding Plaintiff's failure to have exhausted administrative remedies is not convincing because Plaintiff did exhaust her remedies with respect to MGM.

The UAW/MGM CBA's Dispute Resolution procedure is comprised of three steps. Plaintiff availed herself of Steps I, II.  Only the Union can proceed to Step III when the grievance relates to discharge, as it does in this matter. If a grievance is not resolved by resorting to Steps I-III, then the Union or MGM may voluntarily elect to submit the matter to arbitration, which both parties declined to do in this instance. Plaintiff alleges the unions undertook Step III, but did not seek arbitration.  There is no language in the CBA which makes arbitration mandatory and, in fact, Plaintiff could not have elected to submit the matter to arbitration herself had she wished to do so.  Therefore, as against MGM it appears that Plaintiff has exhausted the administrative remedies available to her under the CBA at issue to the extent she was able.

The Constitution of the International Union requires all its members to "exhaust fully the ...remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress."  Plaintiff could have appealed the Union Defendants' failure to take her grievance to arbitration under this provision.  The Union Defendants *and* MGM argue that Plaintiff's failure to avail herself of this appeal to force the union to seek arbitration precludes her from pursuing a § 1981 claim against them, yet this argument would only be persuasive for the union defendants, and only if § 1981 had an exhaustion requirement.  Her appeal contesting the Union's failure to arbitrate involves a different alleged wrong than her underlying grievance against MGM for wrongfully discharging her.  Thus her pursuing the wrongful discharge matter against MGM through Step II of the grievance process exhausts her remedies under the collective bargaining agreement against MGM. This is the case, even if she did have further remedies against the unions for a different alleged wrong of their refusal to pursue arbitration.

[5] Because Plaintiff has failed to state a § 1981 claim against the Union Defendants for reasons stated in the text, this argument now only affects the § 1981 claim against MGM.

9

requirement under § 301.[6]  This was pointed out to the Defendants during the telephonic hearing, and they were given an opportunity to supplement their briefs with cases that supported their contention that an exhaustion requirement existed under § 1981.  The one case cited by the Defendants that supports an exhaustion requirement under § 1981 was Judge Gadola's decision in *Burton v. Plastics Research Corp.*, *supra.*   In *Burton* an employee failed to exhaust her remedies against her employer under a CBA which required the filing of a grievance if a dispute arose.  *Id.*, 134 F. Supp.2d at 889-890.[7]  With regard to the exhaustion doctrine Judge Gadopla simply stated, "While this general principle typically applies in a case brought under the Labor Management Relations Act of 1947, this Court can find no reason why it should not also apply to a claim brought under Section 1981." *Burton v. Plastics Research Corp.*, 134 F. Supp.2d 881, 890 (E.D. Mich. 2001).  It does not appear that this argument was briefed and fully argued before Judge Godola, and it is believed that there are strong policy arguments and supporting case authority to suggest that this *Burton* holding should not be applied in this case.

A private party alleging federal civil rights violations need not pursue internal administrative remedies before pressing a claim in federal court.  *See Doe on Behalf of Doe v. St. Joseph's Hosp.*, 788 F.2d 411, 425 (7th Cir.1986); *Donaldson v. Taylor Products Div. of Tecumseh Products Co.*, 620 F.2d 155, 158 (7th Cir.1980) (there is no exhaustion requirement

---

[6] An employee who sues for enforcement of his rights under a collective bargaining agreement subject to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), must ordinarily show that he has attempted to use the grievance procedure provided in the contract before seeking judicial relief.  *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965).

[7] Interestingly, although this case did not involve the issue of whether a union member must exhaust her intra-union appeals before bringing a § 1981 claim, the union defendants at once proffered the case for the proposition that § 1981 has an intra-union remedy exhaustion requirement and distinguished many of the cases presented as inapplicable because they did not deal with the specific issue of a union member and intra-union appeal procedures.

under either of the civil rights acts); *Smallwood v. National Can Co.*, 583 F.2d 419, 421 (9th Cir.1978) ("[t]here is no duty to exhaust union remedies as a precondition to suit under Title VII"); *Rios*, *supra*, 467 F.2d at 57("aggrieved employees may seek relief under Title VII without first invoking or exhausting available alternative legal or contractual remedies"); *Varner v. National Super Markets,* 94 F.3d 1209, 1213 (8th Cir.1996) (holding employee not required to exhaust grievance and arbitration remedies under collective bargaining agreement before bringing suit under Title VII), *cert. denied,* 117 S.Ct. 946 (1997); *Tran v. Tran,* 54 F.3d 115, 117 (2d Cir.1995), *cert. denied,* 116 S.Ct. 1417 (1996); Malin, *Arbitrating Statutory Employment Claims in the Aftermath of Gilmer,* 40 St. Louis U.L.J. 77, 84 (1996).

In *Doe on Behalf of Doe v. St. Joseph's Hospital*, *supra*, a woman doctor of Korean descent sued a hospital alleging, inter alia, that the hospital suspended her medical staff privileges on account of racial and gender animus in violation of 42 U.S.C. § 1981 and Titles VI and VII of the Civil Rights Act of 1964. Before filing her federal suit, however, she had not appealed the Executive Committee's affirmance of her suspension in accordance with hospital bylaws. The hospital argued therefore that the district court properly dismissed her civil rights claims because she had failed to exhaust her internal administrative remedies. The Seventh Circuit expressly rejected this argument, holding that exhaustion of remedies does not apply to claims under § 1981, Title VII of the Civil Rights Act of 1964, or, for that matter, any of the federal civil rights laws. *See Doe*, 788 F.2d at 425-26.

The NLRA does not provide an exclusive remedy for allegations of discrimination by unions in the handling of individual employees' grievances. *See Causey v. Ford Motor Co.*, 516 F.2d 416, 425 n. 12 (5th Cir.1975) (union's duty of fair representation under NLRA overlaps

with protection of Title VII). In addition, exhaustion of contractual grievance procedures is not a prerequisite to a Title VII suit. *See Donaldson v. Taylor Prods. Div. of Tecumseh Prods. Co.*, 620 F.2d 155 (7th Cir.1980). The doctrine of arbitration does not prevent Plaintiff from bringing a claim against the union to redress alleged discrimination under Title VII. *See McDonald v. City of West Branch*, 466 U.S. 284 (1984). And, while these cases deal with the lack of a intra-union exhaustion requirement in Title VII, the Title VII civil rights statute is much more analogous to a § 1981 civil rights claim than it is to a § 301 labor claim, because "Title VII and section 1981 are 'parallel or overlapping remedies against discrimination.' *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)." *Waters v. Wisconsin Steel Works of Intern. Harvester Co.*, 502 F.2d 1309, 1316 (7th Cir., 1974).

Further, while an employee, through a union, *may* be able to waive the right to a judicial forum for resolving their statutory rights – possibly even civil rights – such a waiver would have to be "clear and unmistakable" in order to be effective. *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998) (not reaching the question of whether a union could waive an employee's right to judicial forum for statutory antidiscrimination claims, but holding that in order to be enforceable such a waiver would have to be "clear and unmistakable" as to the specific statute at issue); *Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir.,1997) (employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right to obtain a judicial determination of his rights under a statute such as the ADA). Defendants in the present case have not alleged that the Union's Constitution or the CBA contain an express waiver of Plaintiff's § 1981 judicial forum, and thus there is no showing of a "clear and unmistakable" waiver of Plaintiff's statutory rights to pursue her civil rights claim against

MGM under § 1981.

In sum, because the federal pleading requirements only require notice pleading and Plaintiff has pled the prima facie elements of § 1981 and Michigan Elliot-Larsen claims against the Defendant MGM and an Elliot Larsen claim against the Union Defendants, IT IS ORDERED that Plaintiff may submit her Second Amended Complaint excluding the claim against the Union Defendants under § 1981.

SO ORDERED.

Dated: November 4, 2005          s/Steven D. Pepe
Ann Arbor, Michigan          United States Magistrate Judge

Certificate of Service

I hereby certify that copies of this Order were served upon the attorneys of record by electronic means or U. S. Mail on. November 4, 2005

         s/Deadrea Eldridge
         Courtroom Deputy Clerk